# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed: September 8, 2020

| | | |
|---|---|---|
| * * * * * * * * * * * * * | * | UNPUBLISHED |
| MICHELLE DIXON-JONES, | * | |
| | * | |
| Petitioner, | * | No. 14-934V |
| | * | Special Master Oler |
| v. | * | |
| | * | Attorneys' Fees and Costs |
| SECRETARY OF HEALTH | * | |
| AND HUMAN SERVICES, | * | |
| | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * | | |

*Jessica A. Olins*, Maglio Christopher & Toale, Seattle, WA, for Petitioner.
*Sarah C. Duncan*, United States Dep't of Justice, Washington, DC, for Respondent.

### DECISION ON ATTORNEYS' FEES AND COSTS[1]

On October 3, 2014, Michelle Dixon-Jones ("Petitioner") filed a petition for compensation pursuant to the National Vaccine Injury Compensation Program.[2] 42 U.S.C. §300aa-10 to -34 (2012). Petitioner alleged that the influenza vaccination she received on October 6, 2011, caused her to suffer from right arm swelling, extreme pain in the left ear, swelling of both hands, facial rash and shortness of breath, right eye twitching, vertigo, nausea, short term memory loss, and worsening of her fibromyalgia. *See* Petition, ECF No. 1. An entitlement hearing was held on July 23, 2018, and post-hearing briefs were filed thereafter. On September 4, 2019, the undersigned issued her decision denying entitlement.

On March 23, 2020, Petitioner filed a motion for attorneys' fees and costs. ECF No. 92 ("Fees App."). Petitioner requests total attorneys' fee and costs in the amount of $347,029.35,

---

[1] The undersigned intends to post this Ruling on the United States Court of Federal Claims' website. **This means the Ruling will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished Ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755.

representing $299,528.90 in attorneys' fees and $47,500.45 in attorneys' costs. Fees App. at 1-2. Pursuant to General Order No. 9, Petitioner has indicated that she has personally incurred costs of $385.85 in pursuit of this litigation. *Id.* at 2. Respondent responded to the motion on March 24, 2020, stating that "Respondent is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case" and requested that the Court "exercise its discretion and determine a reasonable award for attorneys' fees and costs." Resp't's Resp. at 2-3, ECF No. 93. Petitioner filed a reply on March 27, 2020, reiterating her belief that the requested attorneys' fees and costs are reasonable. Reply, ECF No. 95.

This matter is now ripe for consideration.

**I.     Reasonable Attorneys' Fees and Costs**

Section 15(e) (1) of the Vaccine Act allows for the Special Master to award "reasonable attorneys' fees, and other costs." § 300aa–15(e)(1)(A)–(B). Petitioners are entitled to an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, they are eligible so long as the Special Master finds that the petition was filed in good faith and with a reasonable basis. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008). Here, although Petitioner was denied compensation, the matter necessitated extensive briefing and an entitlement hearing. Thus, the undersigned has no doubt that Petitioner's claim was filed in good faith and that it maintained reasonable basis throughout the matter. Respondent also has not challenged the good faith or reasonable basis of the claim. Accordingly, a final award of reasonable attorneys' fees and costs is proper.

It is "well within the special master's discretion" to determine the reasonableness of fees. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521–22 (Fed. Cir. 1993); *see also Hines v. Sec'y of Health & Human Servs.*, 22 Cl. Ct. 750, 753 (1991). ("[T]he reviewing court must grant the special master wide latitude in determining the reasonableness of both attorneys' fees and costs."). Applications for attorneys' fees must include contemporaneous and specific billing records that indicate the work performed and the number of hours spent on said work. *See Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313, 316–18 (2008).

Reasonable hourly rates are determined by looking at the "prevailing market rate" in the relevant community. *See Blum v. Stenson*, 465 U.S. 886, 895 (1984). The "prevailing market rate" is akin to the rate "in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Id.* at 895, n.11. The petitioner bears the burden of providing adequate evidence to prove that the requested hourly rate is reasonable. *Id.*

**a. Reasonable Hourly Rate**

The undersigned has reviewed the hourly rates requested for the work of Petitioner's counsel at Maglio Christopher and Toale (the billing records indicate that the majority of attorney work was performed by Ms. Amber Wilson, with supporting work done by Ms. Jessica Olins, Ms. Anne Toale, Mr. FJ Caldwell, Mr. Isaiah Kalinowski, and Ms. Diana Stadelnikas) and finds that *most* of the rates requested for their work are reasonable and consistent with what they have previously been awarded for their Vaccine Program work. Some adjustments are necessary, however.

Petitioner requests $361.00 per hour for work performed by Mr. Kalinowski in 2015. This exceeds what Mr. Kalinowski has previously been awarded for his 2015 work. *See Stewart v. Sec'y of Health & Human Servs.*, No. 12-776V, 2017 WL 2807955, at *2 (Fed. Cl. Spec. Mstr. May 30, 2017). A reasonable rate for Mr. Kalinowski's 2015 work is $341.00 per hour. This results in a reduction of $26.00.

Petitioner requests $205.00 per hour for work performed by Ms. Olins in 2019. This exceeds what Ms. Olins has previously been awarded for her 2019 work. *See Baez v. Sec'y of Health & Human Servs.*, No. 17-1488V, 2019 WL 2156463, at *2 (Fed. Cl. Spec. Mstr. Mar. 19, 2019). A reasonable rate for Ms. Olins' 2019 work is $199.00 per hour. This results in a reduction of $1.20.

### b. Reasonable Number of Hours

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera,* 515 F.3d at 1348. Counsel should not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." *Saxton,* 3 F.3d at 1521 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)). Additionally, it is well-established that billing for administrative/clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States,* 18 Cl. Ct. 379, 387 (1989); *Arranga v. Sec'y of Health & Human Servs.*, No. 02-1616V, 2018 WL 2224959, at *3 (Fed. Cl. Spec. Mstr. Apr. 12, 2018).

Upon review, the undersigned is struck by the large number of hours billed on this matter, a total of 1,057.4 including over 500 hours from Ms. Wilson alone in 2018. Fees App. Ex. 2 at 75. Although the case record does have a particularly large volume of medical records due to Petitioner's significant pre-vaccination medical history, the progression of the case was otherwise unremarkable. The medical records were filed in a timely manner, as was respondent's report and the expert reports from both sides, and the case was set for an entitlement hearing thereafter. The hearing itself only lasted one day, with each sides' expert testifying as well as Petitioner herself and was followed by post-hearing briefing. Based upon the amount of work required of this case, the undersigned's impression is that the total billed hours are excessive.

One example of excessive billing is Ms. Wilson's work in reviewing the medical literature and assisting petitioner's expert, Dr. Enrique Aradillas-Lopez in drafting his expert report. She billed 50 hours for this task. By comparison, Dr. Aradillas himself only billed approximately 16 hours to review the records and literature and prepare the report. Based upon a review of Dr. Aradillas' report, the total amount of time expended on its preparation by Ms. Wilson is excessive.

The billing records also reflect Ms. Wilson billed nearly 200 hours alone on trial preparation following the submission of Petitioner's prehearing brief on January 12, 2018 (which also required extensive record review and time to prepare). While many of Ms. Wilson's billing entries are specific as to which medical records she was reviewing, there are many vague ones as well, in which 3-4 hours were billed on tasks such as "Continue review of transcripts, literature, and other decisions in court; contemporaneously update notes regarding relevant points to review with expert for direct testimony and preparation of direct exhibits for trial." Given the amount of time expended on work on review of records not only at the beginning of the case but as a necessity in preparing the prehearing brief, some of this review is no doubt duplicative of past efforts, even

taking into account that the addition of new medical records to the case record might require a re-examination of certain past records.

Also excessive is time billed by Ms. Wilson's co-counsel, Mr. Caldwell. Many of Mr. Caldwell's billing entries are vague (e.g. entries of 6 and 6.5 hours on "preparation for trial with expert witness and co-counsel" and several other entries only referencing review of records and medical literature without further describing which records were being reviewed). Fees App. Ex. 2 at 65. The undersigned notes that Mr. Caldwell's overall participation in the entitlement hearing was limited to cross-examination of Respondent's expert, Dr. Low. Given this fairly limited scope, greater specificity in Mr. Caldwell's billing would have been helpful to ensure his efforts were not duplicative of those of Ms. Wilson.

A broader question is whether the use of co-counsel was an efficient use of resources by Petitioner's counsel. The undersigned notes that the entitlement hearing was originally scheduled for January 29, 2018, and that date was only changed a week before the hearing was to take place. Up until that point, Mr. Caldwell had not been involved in any aspect of this case. Given the relatively limited scope of his participation and the hours it would take for Mr. Caldwell to familiarize himself with the case, and the overall straightforward nature of the entitlement hearing, the undersigned questions whether it would have been more reasonable to have Ms. Wilson handle the entire case herself.

Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in h[er] experience and judgment, [is] reasonable for the work done." *Saxton*, 3 F.3d at 1522; *see also Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (noting that "[t]he special master reduced the number of hours based on a comparison of the length and complexity of this case with other Vaccine Program precedent. This was appropriate."). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged so long as a "concise but clear" justification for the reduction is provided. *Abbott v. Sec'y of Health & Human Servs.*, 135 Fed. Cl. 107,111 (2017). Special masters need not explain how many hours are appropriate. *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 702 (2016).

In the undersigned's experience, the hours billed in this case far exceed those billed in comparable cases. Thus, based upon the undersigned's review of the billed hours and general perception of the case, it's overall complexity, and the amount of work it required, the undersigned finds that a fifteen percent overall reduction is required, resulting in a reduction of $44,925.25. Petitioner is therefore awarded final attorneys' fees of $254,576.45.

### c. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of attorneys' costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992). Petitioner requests a total of $47,500.45 in attorneys' costs. This amount is comprised of acquiring medical records, the Court's filing fee, postage, various travel expenses to meet with Petitioner, Petitioner's expert, and for counsel to attend the entitlement hearing, and for expert work performed by Dr. Aradillas and others. Petitioner has provided adequate documentation to support these costs, and although the

majority of the requested costs are reasonable, the undersigned has noted several reductions which must be made.

First, Petitioner requests compensation for Dr. Aradillas at an hourly rate of $600.00 for his work in reviewing the medical records and preparing an expert report, and at $500.00 per hour for preparing for and testifying in the entitlement hearing. To Petitioner's credit, she has submitted a memorandum along with the motion for attorneys' fees and costs to support these requested hourly rates. Fees App. Ex 1. However, upon consideration of Petitioner's arguments and the factors set forth in *Sabella v. Sec'y of Health & Human Servs.*, the undersigned finds that $500.00 is a more reasonable hourly rate for Dr. Aradillas' non-hearing related work. 86 Fed. Cl. 201, 206 (Fed. Cl. 2009) (noting that in determining the reasonableness of a proposed expert rate, special masters may consider the "area of expertise; the education and training required to provide necessary insight; the prevailing rates for other comparably respected available experts; the nature, quality, and complexity of the information provided; [and] the cost of living in the expert's geographic area.").

Although, as Petitioner has highlighted, Dr. Aradillas possesses impressive credentials and resides in a locale with a high cost of living, his work product is the reason that the undersigned has chosen to reduce his hourly rate. As the undersigned noted in her decision denying entitlement, "Dr. Aradillas displayed apparent gaps in knowledge that undermined his overall opinion." *Dixon-Jones v. Sec'y of Health & Human Servs.* 2019 WL 7556374, at *32 (Fed. Cl. Spec. Mstr. Sept. 4, 2019) (providing several examples of knowledge gaps thereafter). The undersigned further noted that his "incomplete and inaccurate testimony concerning Petitioner's pre-vaccination medical history was an additional factor that caused me to place less weight on his testimony as compared to that of Dr. Low." *Id.* at *33. Therefore, the undersigned finds that it is more appropriate to compensate Dr. Aradillas at $500.00 per hour for all work performed in this case. This results in a reduction of $1,566.70.[3]

Concerning the hours billed by Dr. Aradillas, the undersigned finds them to be reasonable. However, the billing records indicate that Dr. Aradillas billed his full hourly rate for time spent traveling without any indication that he was performing case-related work during that time. Fees App. Ex. 3 at 211. As the Vaccine Program compensates travel time at one-half an individual's standard hourly rate, this results in a reduction of $1,250.00.

Next, the undersigned notes that Ms. Wilson and Dr. Aradillas utilized Amtrak Acela service for their travel. Fees. App. Ex. 3 at 153, 201. The Vaccine Program has previously declined to reimburse petitioner's for upgraded methods of travel, such as first-class airfare, Acela train service, and black car service. *See Reichert v. Sec'y of Health & Human Servs.*, No. 16-697V, 2018 WL 3989429, at *4 (Fed. Cl. Spec. Mstr. Jun. 20, 2018). The undersigned shall reduce the amount requested for this train fare by half, resulting in a reduction of $96.00.

Finally, the undersigned notes the invoice for $6,000.00 submitted for work performed by Dr. Anthony Kirkpatrick. Fees App. Ex. 3 at 61. Although Dr. Kirkpatrick was ultimately not

---

[3] Dr. Aradillas billed a total of $9,400.00 at an hourly rate of $600.00, equivalent to 15.667 hours. Fees App. Ex. 3 at 74. (15.667 * $100.00 per hour reduction) = $1,566.70.

retained to perform additional expert work, it appears that Petitioner reached out for a consultation and to have him review the medical records. The issue is that Dr. Kirkpatrick's invoice is deficient in view of the standards required by the Vaccine Program for expert invoices. Dr. Kirkpatrick's invoice reads thusly: "I spent approximately 10 hours reviewing this case. I also spoke with Attorney Wilson and met with her for 2 hours to discuss my review of the case." *Id.* Per the Guidelines for Practice Under the National Vaccine Injury Compensation Program ("Guidelines"), "the expert's services must be identified with particularity in contemporaneous, dated records indicating the amount of time spent on each task." Guidelines, Section X at 71.[4]

Petitioner's submission falls wholly short of this standard – it does not even establish a concrete amount of time expended by Dr. Kirkpatrick, let alone how that time was spent in any detail. Such deficient billing records do not permit the undersigned to determine the reasonableness of the work performed by Dr. Kirkpatrick. The onus is on Petitioner's counsel, a very experienced practitioner in the Vaccine Program, to apprise potential experts of the Vaccine Program's requirements and ensure that what is submitted to the Court for reimbursement comports with those requirements. Accordingly, the undersigned shall reduce the amount attributable to his work by 50%, a reduction of $3,000.00.

Based on all of the above, Petitioner is therefore awarded final attorneys' costs of $41,587.75.

### d. Petitioner's Costs

Pursuant to General Order No. 9, Petitioner states that she has personally incurred costs of $385.85 associated with attending the entitlement hearing. Fees App. Ex. 4. Petitioner has provided adequate supporting documentation and the costs are reasonable. Petitioner shall therefore be fully reimbursed.

## II. Conclusion

In accordance with the Vaccine Act, 42 U.S.C. §15(e) (2012), the undersigned has reviewed the billing records and costs in this case and finds that Petitioner's request for fees and costs, other than the reductions delineated above, is reasonable. Based on the above analysis, the undersigned finds that it is reasonable to compensate Petitioner and her counsel as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $299,528.90 |
| (Reduction to Fees) | - ($44,952.45) |
| **Total Attorneys' Fees Awarded** | **$254,576.45** |
| | |
| Attorneys' Costs Requested | $47,500.45 |
| (Reduction of Costs) | - ($5,912.70) |
| **Total Attorneys' Costs Awarded** | **$41,587.75** |
| | |

---

[4] The Guidelines are available at: http://www.cofc.uscourts.gov/sites/default/files/Guidelines-4.24.2020.pdf.

| Total Amount Awarded | $296,164.20 |
|---|---|
|  |  |
| Petitioner's Costs | $385.85 |
|  |  |
| Total Amount Awarded | $296,550.05 |

**Accordingly, the undersigned awards the following:**

1) **a lump sum in the amount of $296,164.20, representing reimbursement for reasonable attorneys' fees and costs, in the form of a check payable jointly to Petitioner and Maglio Christopher and Toale, and forwarded to Maglio Christopher and Toale, PA, 1605 Main Street, Suite 710, Sarasota Florida 34236; and**

2) **a lump sum in the amount of $385.85, representing reimbursement for Petitioner's costs, in the form of a check payable to Petitioner.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[5]

**IT IS SO ORDERED**.

s/ Katherine E. Oler<br>
Katherine E. Oler<br>
Special Master

---

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.